[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MARCH 26, 2008
THOMAS K. KAHN
CLERK

_____

No. 07-13974
Non-Argument Calendar

_____

D. C. Docket No. 05-00155-CV-CDL-4

SAMMY L. SIMS,

Plaintiff-Appellant,

versus

PATRICIA J. TAYLOR,
Test Security Specialist, Educational
Testing Service, In Her Individual and Official
Capacity,
EDUCATIONAL TESTING SERVICE,
CAMILLE HASSENPLUG, Ph.D., Testing Coordinator,
Columbus State University, In Her Individual and
Official Capacity,
FRANK BROWN, Ph.D,
President, Columbus State University,
KURT LANDGRAF, President and Chief Executive
Officer,
Educational Testing Service,

Defendants-Appellees.

Appeal from the United States District Court
for the Middle District of Georgia
_____

**(March 26, 2008)**

Before MARCUS, WILSON and PRYOR, Circuit Judges.

PER CURIAM:

Sammy L. Sims appeals pro se the summary judgment in favor of
Educational Testing Service and against Sims's complaint of breach of contract.
The district court concluded that the Testing Service was not required to release
Sims's test score after Sims failed to present "acceptable and valid" identification.
We affirm.

## I. BACKGROUND

Sims filed a complaint against Educational Testing Service; Kurt Landgraf,
the president of the Testing Service; Patricia Taylor, an employee of the Testing
Service; Camille Hassenplug, an employee of Columbus State University who
independently contracted with the Testing Service to administer exams; and Frank
Brown, the president of Columbus State University. Sims alleged that the refusal
by the Testing Service and the named parties to release his test scores from a
Praxis exam administered in September 2005 violated his federal civil rights and

2

the defendants committed defamation and breach of contract under Georgia law.

While employed as a substitute teacher, Sims decided to seek a professional teaching certificate. To obtain the certificate, Sims had to pass the Praxis I exam and the two-part Praxis II exam. Sims registered to take these exams, which were administered by the Testing Service in November 2004, January 2005, and September 2005.

The Praxis registration bulletins required registrants to present "acceptable and valid" identification before admission to each examination. Registrants were required to present a single "primary identification document" that displayed their photograph and signature. Acceptable primary identification documents included a passport, driver's license, state identification, national identification, or military identification. If the primary identification did not contain a photograph or signature, then the registrant was required to produce an unexpired supplemental identification document that displayed a recent photograph and signature. The bulletin stated that a government-issued identification document, student identification, or a confirmation-of-identity letter obtained from the registrant's educational institution were acceptable forms of identification, but the bulletin prohibited the use of any expired identification, a Social Security card, a temporary identification document, or an employee identification card.

3

The bulletin stated that, if the registrant could not present the required identification, the registrant would not be admitted to the exam and would forfeit the test and registration fees. If a registrant presented unacceptable identification, but was admitted to the exam, an employee at the test center could consider the identification "questionable" and either dismiss the registrant from the exam or submit the issue for further review by filing a supervisor's irregularity report. If it identified a problem with the identification, the Testing Service reserved the option either to decline to score the test or cancel the test score.

For his admission to the first part of the Praxis II exam in November 2004, Sims presented an expired Alabama temporary driver's license and an attorney identification card issued by a federal district court in Pennsylvania. Camille Hassenplug admitted Sims into the exam, but told Sims that his test might not be scored. Hassenplug filed an irregularity report. Sims wrote on his exam that he agreed to comply with the conditions stated in the bulletin. Patricia Taylor later spoke with Sims on the telephone and eventually agreed to accept Sims's expired Alabama driver's license and release Sims's score.

Sims sat for the Praxis I exam in January 2005. Sims alleged that Hassenplug did not require him to produce any identification for admission to the Praxis I examination, but Hassenplug alleged that Sims did not present acceptable

4

identification. Hassenplug filed a report that stated Sims did not produce proper identification, but was admitted because Hassenplug remembered him from the earlier Praxis II exam and Sims told her that the Testing Service had released his test score for the first part of the Praxis II exam. Sims again wrote on his exam answer sheet that he agreed to the comply with the conditions of the bulletin.

When Sims registered for the second part of the Praxis II exam, Hassenplug reminded Sims to bring acceptable identification to the examination. Sims's admission ticket stated that the Testing Service would accept those documents listed in the bulletin as "primary identification documents." For his admission to the second part of the Praxis II exam, Sims presented several identification documents: his birth certificate, an expired Alabama temporary driver's license, a Social Security card, the attorney identification card, and his employee identification cards from the Muscogee County School District and Carver High School. Hassenplug told Sims that his identification documents were unacceptable. Although Hassenplug had been instructed not to admit Sims into the exam if he did not present proper identification, she later admitted Sims at the instruction of her supervisors after Sims became "threatening." Sims wrote on his exam, "I hereby agree to the conditions set forth in the Registration Bulletin and certify that I am the person whose name and address appear on this answer sheet."

Taylor later mailed a letter to Sims that stated that the Testing Service was considering whether to cancel Sims's test score because he did not provide acceptable identification, instructed Sims to mail "a clear copy of [his] passport or other positive identification" for review, and noted that Sims's score would be canceled if he did not timely respond. Sims promptly responded by letter, submitted copies of the same documents presented at the last exam, and asserted that the documents had been "accepted and approved" for the earlier tests. Taylor replied that the documents "did not resolve" the matter, explained that Sims's test score was "on hold," and granted Sims until December 11, 2005, "to submit proper identification." After Sims failed to submit any other identification, the Testing Service refused to release Sims's score for the second part of the Praxis II exam.

After Sims filed his complaint, Sims and the individual defendants submitted motions for judgment on the pleadings and for summary judgment. The district court dismissed several of Sims's federal and state law claims and granted several of the defendants' motions for summary judgment. Sims later voluntarily dismissed his remaining claims with prejudice, except the claim for breach of contract against the Testing Service.

After discovery, the Testing Service moved for summary judgment. The Testing Service argued that Sims failed to satisfy a condition precedent of the

6

contract because he did not present acceptable identification for the second part of the Praxis II exam, the Testing Service exercised its contractual right to hold Sims's score, and Sims did not suffer damages because he failed the exam. Sims responded that he had presented acceptable primary identification, the Testing Service waived its right to require acceptable identification, and he suffered irreparable damage to his teaching career when the Testing Service refused to release the score for his last exam.

The district court granted summary judgment in favor of the Testing Service and denied Sims's motion for summary judgment. The district court concluded that the agreement between Sims and the Testing Service, "[a]ssuming . . . a contract existed," required Sims to present acceptable identification and Sims failed to satisfy that condition.

## II. STANDARD OF REVIEW

We review a grant of summary judgment <u>de novo</u> and review the evidence in the light most favorable to the nonmoving party. <u>Thomas v. Cooper Lighting, Inc.</u>, 506 F.3d 1361, 1363 (11th Cir. 2007). Summary judgment is appropriate when there exists no genuine issue of material fact and the moving party is thereby entitled to judgment as a matter of law. <u>Id.</u> (quoting Fed. R. Civ. P. 56(c)).

**III. DISCUSSION**

Sims challenges the summary judgment in favor of the Testing Service on three grounds.  First, Sims contends that the Testing Service waived its contractual requirement for Sims to present "acceptable and valid" identification to be admitted into the Praxis exam.  Second, Sims argues that his attorney identification card qualified as an acceptable form of identification.  Third, Sims contends that he presented evidence of damages.  We reject Sims's first two arguments and need not address his third argument.

*A. The Record Does Not Establish That the Testing Service*
*Waived the Identification Requirement.*

Under Georgia law, "[w]here the terms of a contract are plain and unambiguous, the construction of the contract is a question of law" and is "particularly appropriate for summary adjudication."  Garvin v. Smith, 510 S.E.2d 863, 864 (Ga. Ct. App. 1999); see also Ga. Code Ann. § 13-2-1.  "If the terms used are clear and unambiguous[,] they are to be taken and understood in their plain, ordinary, and popular sense."  Imaging Sys. Int'l, Inc. v. Magnetic Resonance Plus, Inc., 527 S.E.2d 609, 610–11 (Ga. Ct. App. 2000) (quoting (alteration in original) (internal quotation marks omitted); see also Ga. Code Ann. § 13-2-2(2) ("[w]ords generally bear their usual and common signification").  A party may waive, by its actions or conduct, a contractual provision for its benefit.  Kusuma v. Metametrix,

8

Inc., 381 S.E.2d 322, 324 (Ga. Ct. App. 1989). To determine if a waiver occurred, the court considers whether "the conduct of both parties intended to result in the 'mutual disregard' of, or 'mutual departure' from the contract terms." Id. at 323 (emphasis omitted).

Although the district court did not address Sims's waiver argument, the record establishes that no waiver occurred. The record contains no evidence that the Testing Service unilaterally waived nor did the Testing Service and Sims mutually agree to dispense with Sims's duty to present "acceptable and valid" identification for the second part of the Praxis II exam. Sims agreed to the terms of the bulletin for the second part of the Praxis II exam, and the Testing Service did not waive those terms.

*B. Sims's Attorney Identification Card Did Not Qualify as a "National Identification" Under the Terms of the Bulletin.*

Sims contends that the bulletin did not specifically define the terms "state identification" and "national identification" and there was an ambiguity about whether his attorney identification card was acceptable as one of these primary forms of identification. We disagree. Sims's attorney identification card displayed his picture and signature from 28 years earlier and stated that Sims was a member of the United States District Court for the Eastern District of Pennsylvania and could use the card to enter the federal courthouse in Philadelphia. Sims admitted

9

that the attorney identification card was limited to use in the issuing court. Based on the appearance of the card and its limited use, the district court correctly concluded that the attorney identification card did not qualify as either a state or national identification. An investigation also revealed that Sims's attorney identification card was no longer valid, and the bulletin stated that "any expired ID" constituted an "unacceptable identification document."

Because Sims's attorney identification card did not qualify as an "acceptable primary identification document," the Testing Service had a contractual right, under the terms in the bulletin, to refuse to release Sims's test score. The bulletin stated, "When, in ETS's judgment, or the judgment of the test center personnel, there is a discrepancy in a test taker's identification, the test taker may be dismissed from the test center. In addition, ETS may decline to score the test, or cancel the test score." The record establishes that there was no genuine issue of material fact to support Sims's complaint that the Testing Service breached any contract with Sims.

## IV. CONCLUSION

The summary judgment in favor of the Testing Service is **AFFIRMED**.